UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| NEAL THOMPSON, )<br>)<br>    Plaintiff, )<br>)<br>  vs. )<br>)<br>CAROLYN W. COLVIN,[1] )<br>**Acting Commissioner of Social Security,** )<br>)<br>    Defendant. ) | Case No. 2:12CV 41 RWS(LMB) |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying the application of Neal Thompson for Disability Insurance Benefits under Title II of the Social Security Act, and Supplemental Security Income under Title XVI of the Act. The cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b). Plaintiff has filed a Brief in Support of Plaintiff's Complaint. (Document Number 12). Defendant has filed a Brief in Support of the Answer. (Doc. No. 17).

### Procedural History

On March 22, 2010, plaintiff filed his applications for benefits, claiming that he became

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

- 1 -

unable to work due to his disabling condition on February 2, 2010. (Tr. 110-16, 117-21). These claims were denied initially, and following an administrative hearing, plaintiff's claims were denied in a written opinion by an Administrative Law Judge (ALJ) on February 22, 2011. (Tr. 20-29). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 6, 2012. (Tr. 11, 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

**A.　ALJ Hearing**

Plaintiff's administrative hearing was held on September 30, 2010. (Tr. 37). Plaintiff was present and was represented by counsel. (Id.).

The ALJ examined plaintiff, who testified that he lived with his wife and his eight-year-old daughter. (Tr. 39).

Plaintiff stated that he finished the tenth grade, and has not received any additional education or vocational training. (Tr. 40).

Plaintiff testified that, in the past fifteen years, he has worked as a truck driver and mechanic, a laborer in a tire recycling plant, a service manager and tire repairer at Wal-Mart, and a tire salesman. (Id.). Plaintiff stated that he has not worked since February 2, 2010. (Tr. 41).

Plaintiff testified that he has a bad back, and that he underwent surgery in August 2010. (Id.). Plaintiff stated that his condition has not improved since he underwent surgery. (Tr. 42). Plaintiff testified that his doctor told him it would take time before he would feel any kind of difference. (Id.). Plaintiff stated that his doctor has limited him to no bending over, no twisting,

and no lifting over ten pounds. (Tr. 43). Plaintiff testified that his doctor told him he could drive if he "felt like driving." (Id.). Plaintiff stated that he started driving "some" about one month after his surgery. (Id.).

Plaintiff testified that he is able to sit in a chair for about thirty minutes. (Id.). Plaintiff stated that he spends a total of two to four hours a day lying down. (Tr. 44).

The ALJ stated to counsel "the problem in this case is that my medical evidence stops at the surgery." (Id.). The ALJ noted that plaintiff underwent surgery only six months after his alleged onset date, and plaintiff must establish a disability lasting twelve months. (Id.). The ALJ stated that he needed to see plaintiff's doctor's notes following surgery to determine whether the surgery was successful and what kind of limitations plaintiff has. (Id.).

The ALJ stated "quite frankly, right now, you know, can he work today, no. But can he work a month from now or two months from now before that twelve month duration kicks in that's the issue." (Id.). The ALJ stated that plaintiff's case "got to a hearing too fast." (Tr. 46). The ALJ stated that the issue "really isn't can he work today or tomorrow the question is can he work next February." (Id.). The ALJ stated that plaintiff's condition was "bad enough you had to stop work. You had a job, you were making good money. You didn't stop because you didn't want to work." (Id.).

Plaintiff's attorney requested that the ALJ leave the record open for thirty days so he could submit additional medical evidence. (Tr. 50). The ALJ granted plaintiff's request, and stated that he did not want to make a decision until he saw the new evidence. (Id.).

**B.** **Relevant Medical Records**

The record reveals that plaintiff underwent an anterior lumbar interbody fusion at L5-S1

performed by Steven Craig Meyer, M.D. of Columbia Orthopaedic Group on August 16, 2010, for a diagnosis of low back pain secondary to L5 lytic pars defect[2] with anterior listhesis[3] L5 and S1 with instability. (Tr. 313-15). Dr. Meyer stated that plaintiff had had long-standing back pain, which was unresponsive to conservative measures including therapy and multiple injections. (Tr. 313). Dr. Meyer noted that imaging studies showed an unstable segment with lytic pars defect at L5-S1. (Id.).

Plaintiff presented to Dr. Meyer for follow-up on August 31, 2010, at which time Dr. Meyer noted that plaintiff had had some problems with wound dehiscence[4] and he was being treated by Kelly Nash, P.A. (Tr. 307). Plaintiff reported a lot of discomfort both in his low back and his legs bilaterally, and difficulty sleeping. (Id.). Upon examination, Dr. Meyer noted some evidence of dehiscence but no evidence of infection or active drainage. (Id.). Plaintiff had full lower extremity strength, no appreciable muscle weakness, and negative straight leg raise bilaterally. (Id.). X-rays of the lumbar spine revealed excellent alignment at the L5-S1 level, good interbody fusion, and no problems with the hardware. (Id.). Dr. Meyer continued plaintiff's

---

[2]Degeneration or deficient development of the segment of bone between the superior and inferior articular facets. Stedman's Medical Dictionary, 1428 (28th Ed. 2006).

[3]Forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or on the sacrum. Stedman's at 1813.

[4]A bursting open, splitting, or gaping along natural or sutured lines. Stedman's at 505.

Hydrocodone,[5] added Elavil[6] to help with his sleeping, and added Neurontin.[7] (Id.). Dr. Meyer continued plaintiff's restrictions of limited lifting, bending, and twisting. (Id.).

On September 28, 2010, Dr. Meyer indicated that plaintiff was doing much better than he was at his last visit. (Tr. 348). Plaintiff reported that his leg pain was essentially gone, although he continued to experience right lumbosacral discomfort. (Id.). Plaintiff had weaned himself off of the Neurontin and was no longer taking the Elavil. (Id.). Plaintiff continued to take Hydrocodone. (Id.). Plaintiff was walking as much as possible. (Id.). Plaintiff indicated that his back pain was "quite severe" and affected his activities of daily living. (Id.). Upon examination, plaintiff's incision was essentially healed. (Id.). Dr. Meyer noted tenderness to palpation of the right lumbosacral region, full motor strength throughout the lower extremities with the exception of the right hip flexor, full range of motion of the hips without discomfort, and negative straight leg raise bilaterally. (Id.). Dr. Meyer indicated that he was "pleased" with plaintiff's progress. (Id.). Dr. Meyer stated that plaintiff was still experiencing discomfort but he was encouraged to remain as active as possible and to continue walking as much as he can. (Id.). Dr. Meyer planned to wean plaintiff from the Hydrocodone. (Id.).

**Evidence Submitted to the Appeals Council**

Plaintiff saw Dr. Meyer on November 18, 2010, at which time he reported that he felt like

---

[5]Hydrocodone is an opioid analgesic indicated for the relief of moderate to moderately severe pain. See Physician's Desk Reference (PDR), 3144-45 (63rd Ed. 2009).

[6]Elavil is an antidepressant indicated for the treatment of mood disorders and nerve pain. See WebMD, http://www.webmd.com/drugs (last visited August 12, 2013).

[7]Neurontin is indicated for the treatment of nerve pain. See WebMD, http://www.webmd.com/drugs (last visited August 12, 2013).

he was getting better on a daily basis. (Tr. 363). Plaintiff continued to experience right hip pain, particularly when he walks. (Id.). Plaintiff was no longer taking pain medication, and only took Tylenol PM at night to help him sleep. (Id.). Upon examination, plaintiff's incision was well healed, plaintiff had some tenderness directly over the right SI joint extending in the right buttock, no tenderness over the back, negative straight leg raise, full range of motion of the hips, and intact tandem gait. (Id.). X-rays of the lumbar spine revealed excellent alignment at the L5-S1 level, a progressive fusion, and no problems with the hardware. (Id.). Dr. Meyer stated that plaintiff "is progressing." (Id.). Dr. Meyer noted that plaintiff was having some difficulty with his right SI joint. (Id.). Dr. Meyer recommended an SI joint injection with Dr. Tiede. (Id.).

Plaintiff presented to Jeffrey M. Tiede, M.D. at Columbia Interventional Pain Center for a possible injection on December 6, 2010. (Tr. 353-56). Plaintiff complained primarily of right buttock pain. (Tr. 353). Plaintiff reported that his back was improved. (Id.). Plaintiff reported ongoing axial low back pain and some right buttock pain, primarily very little radiculopathic[8] phenomenon. (Id.). Plaintiff took Hydrocodone rarely. (Id.). Upon examination, plaintiff was exquisitely tender across the right posterior superior iliac spine and had limited range of motion of the lumbar spine. (Tr. 355). Dr. Dr. Tiede's assessment was SI joint arthropathy[9] and sacroiliitis.[10] (Tr. 356). Dr. Tiede administered a right SI joint steroid injection. (Id.).

Plaintiff saw Dr. Tiede on December 28, 2010, at which time Dr. Tiede stated that plaintiff's surgery "has not provided much benefit; and he is back to his pre-level area of pain,

---

[8]Disorder of the spinal nerve roots. Stedman's at 1622.

[9]Any disease affecting a joint. Stedman's at 161.

[10]Inflammation of the sacroiliac joint. Stedman's at 1714.

which is 6-10/10." (Tr. 357). Plaintiff reported that his last injection provided no benefit. (Id.). Dr. Tiede indicated that plaintiff's pain was in his low back and left buttock, and he had diffuse pain complaints in the lower extremity. (Id.). Upon physical examination, Dr. Tiede noted that plaintiff was uncomfortable, transitioned slowly from sitting to standing, and had limited lumbar spine range of motion in flexion and extension. (Tr. 358). Dr. Tiede's assessment was lumbar post-laminectomy pain syndrome. (Id.). Dr. Tiede prescribed extra-strength Hydrocodone, physical therapy, and a TENS[11] unit. (Tr. 358, 387).

Plaintiff presented to Amy Fleshman, PT, at Advance Physical Therapy on January 18, 2011, for an initial evaluation. (Tr. 380-81). Upon examination, Ms. Fleshman noted tenderness with palpation over the lumbar spine and the lumbar paraspinals, and plaintiff's gait was antalgic. (Tr. 380). Ms. Fleshman's assessment was lumbar pain and bilateral lower extremity weakness. (Tr. 381). Ms. Fleshman indicted that she believed plaintiff would progress well as long as he remained compliant with a home exercise program and attendance of therapy. (Id.).

Plaintiff attended approximately seven physical therapy appointments from January 18, 2011 through February 16, 2011. (Tr. 370-78). Plaintiff continued to complain of increased lower back pain. (Id.).

On February 18, 2011, plaintiff presented to Dr. Joseph Meyer, M.D. at Columbia Interventional Pain Center to establish care as Dr. Tiede was no longer with the practice. (Tr. 360-62). Plaintiff reported a pain level of seven on a scale of zero to ten. (Tr. 360). Upon examination, plaintiff's stance was moderately stooped at the waist with a slightly bent-knee

---

[11]Transcutaneous electrical nerve stimulation ("TENS") is a method of reducing pain by passage of an electric current. Stedman's at 1838.

posture, plaintiff tended to lean toward the left over the waist, his gait was stable, his back was nontender, and his straight leg raise exams were negative. (Tr. 361). Dr. Meyer's assessment was low back pain, lumbar post-laminectomy pain syndrome, and lumbar intervertebral disc disorder. (Id.). Dr. Joseph Meyer stated that plaintiff's surgery performed by Dr. Craig Meyer did not seem to help plaintiff's pain. (Tr. 362). Dr. Joseph Meyer stated that injections, medications, a TENS unit and physical therapy have provided no pain relief. (Id.). Dr. Joseph Meyer stated that it is his impression that plaintiff suffers from a chronic pain syndrome associated with at least some degree of degenerative spine condition, and that he did not seem to be making unrealistic demands. (Id.). Dr. Meyer indicated that he did not believe issues of secondary gain such as medication demands or employment issues were contributing to plaintiff's problems, although he had just met plaintiff. (Id.). Dr. Meyer prescribed Tizanidine[12] for plaintiff's pain and to help him sleep; and physical therapy. (Id.). Dr. Meyer also ordered a CT scan of the lumbar spine. (Id.).

Plaintiff presented to Dr. Craig Meyer on February 25, 2011, for a follow-up regarding his surgery. (Tr. 367). Plaintiff reported that his pain had gradually returned to the point where it was before surgery. (Id.). Plaintiff's pain was primarily in the left lumbosacral region, although he also experienced pain on the right side. (Id.). Plaintiff reported pain with prolonged sitting and when standing up completely straight. (Id.). Upon examination, plaintiff was tender to palpation over the left SI joint; he had difficulty standing up straight as it caused him pain; and his motor and sensory was intact throughout the lower extremities. (Id.). Plaintiff underwent a CT

---

[12]Tizanidine is a muscle relaxer indicated for the relief of muscle spasms. See WebMD, http://www.webmd.com/drugs (last visited August 12, 2013).

scan, which revealed a good interbody fusion at L5-S1. (Id.). Plaintiff also underwent a bone scan, which revealed some increased activity of the posterior elements of L5 along the lytic pars defect. (Id.). Dr. Meyer diagnosed plaintiff with status post anterior lumbar interbody fusion at L5-S1 for lytic pars defect with continued pain. (Id.). Dr. Meyer stated that plaintiff's fusion was good, but he wondered if "there is still some micro-motion there at the site of the lytic pars defect that is causing him pain." (Id.). Dr. Meyer indicated that he would inject the pars area with Lidocaine and steroid to see if that has any positive benefit on his pain, and, if it does, he would consider surgery. (Id.).

Dr. Meyer consulted with plaintiff by telephone on March 8, 2011, at which time plaintiff reported that the injection did not really help him at all. (Tr. 368). Dr. Meyer indicated that he had reviewed the CT scan and it appears that he has a good solid fusion but he may be experiencing some irritation of the facet joints at L4-5 and above. (Id.). Dr. Meyer stated that he would need to remove the hardware but recommended waiting another two months to assure the fusion is solid. (Id.). Dr. Meyer indicated that he would tentatively plan on removing the hardware in June. (Id.).

### The ALJ's Determination

The ALJ made the following findings:

1. The claimant meets the insured status requirements of Title II of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since February 2, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following "severe" physical impairments: disorders of the lumbar spine (discogenic and degenerative), status post fusion in August 2010, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that, within twelve (12) months of his alleged onset date, the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on May 31, 1966 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a "limited" level of education (10th grade) and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of jobs skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-29).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits

protectively filed on March 17, 2010, Neal Alan Thompson, the claimant, is not disabled under sections 216(I) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on March 5, 2010, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 29).

## Discussion

### A. Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld. See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). The analysis required has been described as a "searching inquiry." Id.

### B. The Determination of Disability

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a). The claimant has the burden of proving that s/he has a disabling impairment. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the

next step which inquires into whether the impairment prevents the claimant from performing his or her past work. See 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. See id. If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

The Commissioner has supplemented this five-step process for the evaluation of claimants with mental impairments. See 20 C.F.R. §§ 404.1520a (a), 416.920a (a). A special procedure must be followed at each level of administrative review. See id. Previously, a standard report entitled "Psychiatric Review Technique Form" (PRTF), which documented application of this special procedure, had to be completed at each level and a copy had to be attached to the ALJ's decision, although this is no longer required. See 20 C.F.R. §§ 404.1520a (d), (d) (2), (e), 416.920a (d), (d) (2), (e); 65 F.R. 50746, 50758 (2000). Application of the special procedures required is now documented in the decision of the ALJ or Appeals Council. See 20 C.F.R. §§ 404.1520a (e), 416.920a (e).

### C. **Plaintiff's Claims**

Plaintiff raises three related claims. Plaintiff first argues that the ALJ erred in determining that plaintiff's condition did not meet the duration requirements, and that plaintiff had the RFC to perform sedentary work within twelve months of his alleged onset date. Plaintiff next argues that the ALJ erred in failing to adequately develop the record with regard to his RFC. Plaintiff finally argues that the evidence submitted to the Appeals Council does not support the ALJ's decision.

The ALJ made the following determination regarding plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that, within twelve (12) months of his alleged onset date, the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(Tr. 26).

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (citing Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See Lauer, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); Casey v. Astrue, 503 F.3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an

ALJ will be upheld if it is supported by substantial evidence in the record. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ noted that this is a "'duration' case." (Tr. 27). The ALJ stated that the evidence of record establishes that, subsequent to plaintiff's August 2010 lumbar fusion surgery, plaintiff's condition improved significantly before February 2011. (Id.). In support of this finding, the ALJ stated that the evidence demonstrates that plaintiff is able to ambulate effectively without the use of an assistive device, x-rays show an excellent alignment, plaintiff has started walking, is able to lift and carry ten pounds, has started driving a car, and can sit for thirty minutes at a time. (Id.). The ALJ stated that notes from a September 2010 office visit show significant improvement. (Id.). The ALJ concluded that plaintiff's "back pain was significant before the surgery but has improved following surgery to the point that he could perform sedentary work activities." (Id.).

At the time of the ALJ's decision, the most recent medical records available were from plaintiff's September 2010 follow-up. Plaintiff submitted the following additional medical evidence to the Appeals Council: records from Columbia Interventional Pain Center dated December 6, 2010 through February 18, 2011; records from Columbia Orthopaedic Group dated November 18, 2010 through March 8, 2011; and records from Advances in Therapy dated December 28, 2010 through February 16, 2011. (Tr. 4).

"Where, as here, the Appeals Council considers new evidence but denies review, [the court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007).

The undersigned finds that the ALJ's RFC determination is not supported by substantial

evidence on the record as a whole. The evidence considered by the ALJ reveals that in September 2010, six weeks following plaintiff's surgery, plaintiff reported that his leg pain was essentially gone but he continued to experience right lumbosacral pain. (Tr. 348). Plaintiff reported that his back pain was "quite severe," and affected his activities of daily living. (Id.). Upon examination, Dr. Meyer noted tenderness to palpation of the right lumbosacral region, full motor strength throughout the lower extremities with the exception of the right hip flexor, full range of motion of the hips without discomfort, and negative straight leg raise bilaterally. (Id.). Dr. Meyer acknowledged that plaintiff was still experiencing pain, but encouraged him to remain as active as possible. (Id.).

Although the ALJ indicated that he relied on this evidence in formulating his RFC, it does not support the ALJ's determination. Plaintiff continued to report lumbosacral pain that affected his activities of daily living, and Dr. Meyer noted objective findings on examination, specifically tenderness to palpation of the right lumbosacral region, and some decreased strength in the lower extremities. Dr. Meyer did not provide an opinion regarding plaintiff's functional limitations, but encouraged him to try to remain active. While this evidence may support the ALJ's finding that plaintiff's back pain improved somewhat immediately following surgery, it does not support the ALJ's finding that plaintiff was capable of performing the full range of sedentary work.

Further, the evidence submitted to the Appeals Council does not support the ALJ's finding that plaintiff's back pain improved following surgery to the extent that he was capable of performing sedentary work. In November 2010, plaintiff complained of right hip pain, and Dr. Meyer noted tenderness over the right SI joint extending in the right buttock. (Tr. 363). Dr. Meyer recommended an SI joint injection. (Id.). In December 2010, plaintiff complained of low

back pain and some right buttock pain. (Tr. 353). Upon examination, Dr. Tiede noted that plaintiff was exquisitely tender across the right posterior superior iliac spine and had limited range of motion of the lumbar spine. (Tr. 355). Dr. Tiede diagnosed plaintiff with SI joint arthropathy and sacroiliitis and administered a right SI joint steroid injection. (Tr. 356). In December 2010, Dr. Tiede stated that plaintiff's surgery "has not provided much benefit; and he is back to his pre-level area of pain." (Tr. 357). Upon examination, Dr. Tiede noted that plaintiff was uncomfortable, transitioned slowly form sitting to standing, and had limited lumbar spine range of motion in flexion and extension. (Tr. 358). Dr. Tiede diagnosed plaintiff with lumbar post-laminectomy pain syndrome, and prescribed Hydrocodone, physical therapy, and a TENS unit. (Tr. 358, 387). Plaintiff attended seven physical therapy sessions in January and February 2011, and continued to complain of increased lower back pan. (Tr. 370-78). On February 18, 2011, days prior to the ALJ's decision, Dr. Joseph Meyer at Columbia Interventional Pain Center noted that plaintiff's surgery did not seem to help plaintiff's pain, and diagnosed plaintiff with low back pain, lumbar post-laminectomy pain syndrome, and lumbar intervertebral disc disorder without myelopathy. (Tr. 361). Dr. Joseph Meyer expressed the opinion that plaintiff suffers from a chronic pain syndrome associated with a degenerative spine condition, and that issues of secondary gain did not appear to be contributing to plaintiff's problems. (Tr. 362). Dr. Meyer prescribed Tizanidine and physical therapy. (Id.).

The ALJ's conclusion that plaintiff was capable of performing the full range of sedentary work lacks the support of substantial evidence. The ALJ acknowledged at the hearing that plaintiff was unable to work at that time, and stated that it was necessary to obtain additional medical records to determine whether plaintiff was disabled for the twelve month required period.

(Tr. 44-46). The evidence available to the ALJ at the time he rendered his decision was insufficient to determine plaintiff's RFC. Neither Dr. Meyer nor any other physician provided an opinion regarding plaintiff's functional limitations.

The ALJ has the duty to develop the record, which includes developing the record as to the medical opinion of the claimant's treating physician. Higgens v. Apfel, 136 F. Supp.2d 971, 978 (E.D. Mo. 2001) (citing Brown v. Bowen, 827 F.2d 311, 312 (8th Cir. 1987). The ALJ is required to re-contact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004). While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)).

In this case, the ALJ failed to adequately develop the record. The evidence relied upon by the ALJ was insufficient to determine plaintiff's RFC. The evidence submitted to the Appeals Council reveals plaintiff continued to experience significant back pain following his surgery. Thus, the ALJ should have further developed the record by either contacting plaintiff's treating physician or ordering a consultative examination addressing plaintiff's ability to function in the workplace.

As a result, the undersigned recommends that the decision of the Commissioner be reversed and this matter be remanded to the ALJ in order for the ALJ to obtain medical evidence addressing plaintiff's ability to function in the workplace, and reassess plaintiff's residual

functional capacity.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that, pursuant to sentence four of 42 U.S.C. § 405 (g), the decision of the Commissioner be **reversed** and this case be **remanded** to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.

Dated this 12th day of August, 2013.

*Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE